No. 29,411.

THE STATE OF KANSAS, *Appellee*, v. CECIL STREIT, *Appellant*.

(295 Pac. 652.)

Opinion filed February 7, 1931.

*Charles Rooney* and *Howard Rooney*, both of Topeka, for the appellant.

*Roland Boynton*, attorney-general, *R. O. Mason*, assistant attorney-general, *J. Glenn Logan*, county attorney, *Frank E. Miller* and *Lester M. Goodell*, assistant county attorneys, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Defendant was convicted of robbery from the person, and appeals.

The information charged Vivian Scraper and defendant with the robbery. The proof was that defendant counseled, aided and abetted in planning the robbery, that Vivian Scraper executed it by taking $13,775.49 from the pay-roll messenger of the Security Benefit Association, and that defendant then helped to conceal, care for, and dispose of the money. Defendant was an employee of the association, and had lived with Vivian Scraper, who was divorced from her husband.

Defendant complains because his plea in abatement was overruled. The ground of the plea was that defendant was not granted and did not waive a preliminary examination.

Defendant was arrested on July 12, 1929, and remained in custody. On July 16 he was taken to the court of Topeka for a preliminary examination. He was accompanied by his attorney. By agreement preliminary examination was postponed until July 19, and defendant was taken back to jail. After he was taken back to jail he sent for the sheriff, and told the sheriff he wanted to waive preliminary examination and plead guilty. The sheriff notified the acting county attorney, Mr. John Schenck. Later the sheriff took

defendant to the county attorney's office. Defendant told Mr. Schenck he wanted to waive preliminary examination and plead guilty. Mr. Schenck asked him if he had consulted his attorney. Defendant said he had not—was not sure he had an attorney. Mr. Schenck told him it would be necessary for him to consult his attorney before Mr. Schenck would permit him to waive preliminary examination. An unsuccessful effort was then made to communicate with defendant's attorney by telephone. After waiting five or ten minutes defendant's attorney was reached by telephone, and defendant had a conversation with his attorney. The telephone which defendant used was in the county attorney's office, and he used it in the presence of Mr. Schenck, the assistant county attorney, the sheriff, and the county attorney's stenographer. The county attorney's stenographer testified as follows:

"I was present when Cecil Streit and the sheriff were in the county attorney's office, the morning of the 16th of July. I dialed Mr. Rooney's number for Cecil. Mr. Rooney was not in his office, but later called back. I listened in on the phone, and heard the conversation between Mr. Streit and Mr. Rooney. Mr. Streit said, I believe, 'Will it be all right if I would do what we were talking about last night?' Mr. Rooney said, 'It don't make any difference to me,' or 'I don't care.' I believe he made some mention, did he know if his folks cared. As far as he was concerned, he did not care. Cecil said that is all I wanted to know, if you cared. Cecil then told Mr. Schenck that Mr. Rooney did not care, and they then went down and waived his preliminary."

The assistant county attorney testified as follows:

"And then, I believe, Mr. Streit called Mr. Rooney again and got him on the telephone and had a conversation with Mr. Rooney. I don't remember the exact words, but it was something like this: 'Do you have any objection if I go ahead with what I was talking about last night?' Of course, I didn't hear Mr. Rooney's reply, but after a moment's conversation with Mr. Rooney, Streit turned and said, 'He doesn't care.' It was after that he was taken down to the court of Topeka and waived the preliminary examination."

The sheriff testified that, after talking with his attorney, defendant said he was ready to waive preliminary examination. Defendant was then taken to the court of Topeka, and he there waived preliminary examination.

Defendant's attorney filed a remarkable affidavit. After reciting employment by defendant as defendant's attorney, and postponement of the preliminary examination, the affidavit continued as follows:

"Affiant further states that he thereupon left the courthouse, and that some time later the defendant was induced and enticed by John J. Schenck and Wayne Horning, the sheriff of Shawnee county, Kansas, to waive said preliminary. This transaction was done within an hour after the preliminary had been continued, and that such procedure was had without this affiant as counsel for the defendant being notified by either John J. Schenck or Judge Hugh C. Larimer."

It will be observed the attorney was very careful not to mention the fact that within an hour after continuance of the preliminary examination he had a telephone conversation with his client. At the trial defendant himself testified he did have the conversation with his attorney. It will be observed further the attorney stated no fact which qualified him to make a declaration under oath that Sheriff Horning and Mr. Schenck induced and enticed defendant to waive preliminary examination, and stated no fact from which a conclusion of inducement and enticement might be derived.

The conduct of Mr. Schenck has been described. It was the conduct of an astute, experienced prosecutor, on guard against future fabrication of a sham plea.

Defendant filed an affidavit charging the sheriff with making threats and holding out inducements and enticements to defendant. The sheriff testified orally, and the court settled the matter by the following finding:

"On the other matter the court will be compelled to find under this evidence, there were no improper means used to secure this plea, no threats, no inducements, nor anything that could have influenced the act of the defendant in making this waiver."

Defendant filed an application for change of venue, on the ground there was such widespread prejudice against defendant on the part of the people of Shawnee county it would be impossible to select a jury that could give defendant a fair trial. There was a hearing on the motion, and defendant and the state produced evidence. It is not necessary to discuss the evidence. The application was properly denied, on defendant's own showing. Besides that, the record is barren of any evidence tending to show difficulty in procuring a qualified jury, and at the hearing on the motion for new trial defendant did not attempt to show the verdict of guilty was the result of prejudice against him.

The state proved that Vivian Scraper alone committed the robbery. The state also proved that before and after the robbery

defendant treated it as if it were a joint enterprise. Vivian Scraper was a witness for the state, and was examined and cross-examined. On cross-examination by defendant she was asked whether she had been in the liquor business at a described place, whether she had lived in the Williams home, and whether she had sold liquor for Mrs. Williams when Mrs. Williams was away from home. She answered in the negative. The questions were asked for purpose of impeachment. They did not relate to anything brought out by the state in direct examination, and defendant's side of the case had not been reached. When defendant's side of the case was reached, he produced a witness who testified that Vivian Scraper did sell liquor for Mrs. Williams. After some cross-examination, the state moved to strike out the testimony of the witnesses, and the court instructed the jury to disregard it. Defendant was bound by the answers of Vivian Scraper, and could not impeach her by showing she had been in the liquor business at the Williams place.

Defendant contended he was not impeaching Vivian Scraper; he was merely showing he was not the "master mind" and "moving force" of the robbery, and that Vivian Scraper was capable of perpetrating and did perpetrate the crime without assistance from defendant.

There was no dispute that Vivian Scraper was capable of perpetrating and did perpetrate the robbery without defendant's assistance. She requisitioned an automobile driven by a stranger, and compelled him to take her to the Security Benefit Association building just before the automobile bringing the pay-roll money from the bank arrived. The messenger described what then took place:

"Observed a man and woman parked in a car just north of his car. Got out of the car and started toward the Security Benefit Association steps, when woman rushed up, pointed a gun at him, and said, 'Give me that, you son-of-a-bitch.' He threw the package at the feet of Louis Streit [defendant's brother], who was standing back and to the side of him. She then covered Streit, and told him not to touch it. She grabbed up the money and ran west. He ran into the office and called the police. . . . The woman had on colored glasses, and a handkerchief over her face. Blue smock, dark hat, and dark glasses. Carried what looked like an automatic."

The lady bandit with the master mind made one tactical mistake. She left her purse, her comb, a bullet, her husband's card, some pins, and her mirror, in the "kidnaped" stranger's automobile.

It was not material whose was the master mind or who was the

moving force before the robbery occurred. Defendant's guilt or innocence depended on whether he had told Vivian Scraper about how his company's pay roll was handled, and how it could be taken; whether he spent nearly three months in perfecting, with Vivian Scraper, detailed arrangements for the robbery; and whether, after the robbery, he joined her in concealing and reaping the benefit of the crime. Conceding that Vivian Scraper was a criminal and bold, the fact that some two years before the trial she had sold liquor for Mrs. Williams had no tendency to overcome the state's direct and positive evidence concerning defendant's part in the crime. Its only tendency was to impeach Vivian Scraper, and defendant was precluded from using the intoxicating-liquor incident for that purpose.

Defendant contended he proposed to produce other witnesses who would testify to incidents in which Vivian Scraper displayed disposition and ability to plan and commit crime. Whether defendant learned of the woman's character and disposition in the course of his illicit relations with her does not appear. He testified that when they would quarrel and he would stop seeing her, she would say she was pregnant, and he would go back to her. However that may be, he offered to prove the incidents by named witnesses, and the offers were rejected. Defendant did not consider the matter of sufficient importance to produce the witnesses for oral examination, or to produce their affidavits or depositions, at the hearing on the motion for new trial, and if error was committed in rejecting the offers, the error was waived.

The judgment of the district court is affirmed.